Florida East Coast Railway v. Federal Railroad Administration, and it's a number of consolidated All right, we'll hear first from Mr. Dupree. Thank you, Your Honor. May it please the Court, Tom Dupree on behalf of Florida East Coast and other railroad petitioners. We are challenging an agency rulemaking that was substantively and procedurally flawed. It was substantively flawed in that the agency exceeded its statutory authority by issuing a rule that was not necessary for railroad safety and that conflicts with the preexisting statutory and regulatory scheme. The rulemaking was also procedurally flawed in that the agency failed to respond to significant comments during the rulemaking. It flopped its position without providing an adequate explanation, and it conducted a cost-benefit analysis that can be described at best as seriously deficient. Let me start with the substance. Congress vested the Federal Railroad Administration with the authority to issue rules that are necessary for railroad safety. In this case, the agency has admitted that it lacks any data or evidence supporting its position that a two-person crew is necessary for railroad safety. But why can't it draw on the idea that sort of the common sense idea that two people, you know, make it more safe? Because one keeps the other up, and there are anecdotal stories in the record of things like somebody having to go out on the tracks to or go out in front, I guess, to wave off somebody who was on the tracks and things of that nature. Why isn't that something that's within the FRA's purview under the statute? Sure. A few points on that, Your Honor. First, that wasn't exactly the rationality the agency itself provided in the final rule. But beyond that, there's also a very strong common-sense argument, as the FRA itself has acknowledged, that when you have two persons in the cab, it can create heightened dangers, such as one crew member distracting the other. Also, it puts two employees in an area where you have, you know, very large moving objects that can cause injury. That's true. But one way or the other, they're choosing either by not doing anything or by doing something, they're choosing one over the other, aren't they? Well, they certainly chose two person over one person. And our argument is that under very well- Well, if they did nothing, they would have chosen one person over two person, effectively, right? Well, I don't think so, Your Honor. In other words- Why not? Well, because the preexisting statutory and regulatory scheme describes exactly the process for which railroads can adjust crew size as necessary. So this is not the way that the FRA tries to portray this, is that this rule is necessary because they had to make a choice and that they don't want railroads going out and doing things without FRA being aware of it. That was their rationale. But that's completely false because the preexisting- Do you agree that the rule essentially maintains the status quo? I don't, Your Honor. I don't think it does in several respects. One way is certainly with regard to the majority of railroads in America, short lines, many of them, hundreds of them, in fact, operate with one person in the cab, not two. Okay. Well, let's talk about the- well, so the short line. What about the class ones? Sure. The class ones currently do not use one person in the cab for mainline operations. It did maintain the status quo as to the class ones. It locks that in. Yes, Your Honor. All right. So then as to the remainder, the short lines, it still provides for a process by which they can have one crew member operations, right? They created what they call for the class ones, it would be the special approval process, which as a practical matter is impossible to satisfy. So this is effectively a two-person crew mandate. What makes it impossible to satisfy? Because to satisfy it, there are a few things. One is you have to perform this risk analysis where, not to get too into the details, but as we pointed out in the comments, they basically would require a railroad to show that it's going to be incident-free for centuries. And even if a railroad somehow could satisfy these absurdly impossible criteria, FRA still retains discretion. In other words, they could still say, you know something, yes, you met the criteria, but as a matter of discretion, we're not going to approve it. In fact, the Secretary of Transportation, when they issued the rule, he basically said, don't expect to receive special approval. He said, that is going to be the exception, not the rule. The bottom line is that the agency here has admitted candidly on the record, and this is somewhat extraordinary, at least in my experience, that they don't have evidence or data to support the fundamental premise of the rule, that two-person crews are necessary for railroad safety. The National Transportation Safety Board urged the FRA to actually collect the data before they issued this rule. When all the commenters pointed this out during the rulemaking, they ignored it. They didn't even respond to it. Congress finally had to pass a law telling them. I'm sorry, in fairness, how are they supposed to collect data on the safety of one-person train crews in class one operations when there are no, I mean, right? Yes, but they can collect data on the hundreds of existing short-line operations that use one-person crews. They can draw upon the data generated from the freight railroad experience in Europe and other nations. There's a wealth of data out there. They finally began collecting it last year, early last year. Well, what's wrong with their saying that we'll maintain the status quo for now. In the meantime, we'll continue to collect data. And then maybe at some point, based on that data, we'll perhaps make a new rule. What's wrong with that? I mean, certainly, I assume it's not your position that they need to wait for an accident to occur, and then that leads to the rule. What's wrong with maintaining the status quo now and then continuing to look into the issue? Well, because, Your Honor, the general rule here in kind of the APA context is rulemakings have to be justified by the administrative record that supports the rulemaking. And I don't think FRA can credibly say, you know, we don't have the evidence now to justify a safety rationale for a two-person crew, but we're going to keep an eye on it, and maybe the evidence will develop. Is it fair to say they don't have any evidence? Weren't there a lot of comments that were submitted? Weren't there studies that were commissioned, relying on some qualitative data? But still, it's not like there's no evidence, right? Well, to be fair, they had a couple anecdotes from people who were involved in rail accidents. But as the Ninth Circuit said, when we were in kind of the mirror image position a few FRA issued, they swatted FRA and said a single study is a thin reed on which to base a national rule. That's what the Ninth Circuit said. And now we're in a universe where they don't even have a single study. They have nothing. They, in fact, have said that, as far as they know, one-person crews may actually be safer than two-person crews. And in that universe, they are prohibiting operations that they themselves acknowledge may actually be safer than the status quo. Again, under bread-and-butter APA principles, they lacked adequate data to show that this rule is necessary. Where does it say that they must have data to show this? Well, Congress said that FRA in its rulemaking statute, the organic statute vesting FRA with rulemaking authority, says that FRA in making rules has to base it on relevant information that is available. That's right. I submit that the way FRA historically in this context has done it, as I think most federal agencies do, is to look at actual evidence and data, of which there is copious amounts, rather than looking to the anecdotal... Data is different than evidence. I beg your pardon? Data is different than evidence. I take the point, Your Honor. That's correct. Right. But they have said that they do not have any data that shows two-person crews are safer than one-person crews or that one-person crews are at all unsafe. Also, just before my initial time expires, I would also just like to highlight the serious procedural deficiencies. Actually, it's expired. I do have one question. Part of your argument is based on the fact that this is a change in position for the FRA, that when the FRA withdrew the rule, they said, we don't have the data for the two-person rule. Now, they're changing the position, so there's a heightened burden placed on the FRA. The FRA has pointed to, since 2019, increasing train lengths and also that new technologies may have complicated the operation of trains, which may necessitate the addition of an extra crew member. Do you concede that both of those points contribute to FRA's ability to change its position? No. Neither of those issues has anything to do with the rule that we're talking about here. With regard to train length, Your Honor, FRA has never taken the position or introduced any evidence suggesting that there's any correlation between train length and the number of people necessary to operate the train or crew safety. That's not their position. They've made no connection. And the same is true with the technology. The technology they're talking about is positive train control, which started coming online a decade ago. So there's nothing new under the sun when it comes to positive train control. And the fact that the final rule doesn't offer any detail linking those alleged changes in operations to the safety or necessity of two people in the crew, that is what is fatal to their change circumstances argument, Your Honor. The FRA does not regulate train length. Is that correct? I know they are currently looking at that issue, but to my knowledge, they have not actually acted on that. And to Your Honor's point, if they ultimately conclude that train length is an issue, it's possible they would address that if and when they engage in a rulemaking on that. All right. Thank you very much, Mr. Dupree. We'll hear next from Mr. Rifkind. May it please the Court, David Rifkind for the short-line petitioners. The FRA implicitly recognizes that short lines operate safely with one-person crews in its final rule when it seemingly granted a broad short-line exemption. But then it imposed three arbitrary limitations on its availability. It requires costly alerters, reversing its prior rulemaking. It strips the exemption if a carrier is newly required to carry hazardous materials. And it revokes the exemption if ownership changes. As to alerters, the FRA previously accepted low-speed rail operations as a safety benefit did not justify their cost. Requiring alerters here, the FRA offers no new evidence or argument or analysis why its prior judgment was wrong. Instead, it asserts that the two-person operations were an unwritten assumption of the prior rulemaking, a fact that is plainly contradicted by the prior rulemaking's record. As to hazardous materials, the rule grants a blanket exemption to legacy carriers, including for operations carrying hazardous materials. That exemption is not based on any individualized assessment of risk. Thus, agency has already... It's like a... Isn't... You have to have two years, at least two years of having operated previously, is that right? That's correct, Your Honor. Why wouldn't it be something within FRA's purview to decide that a two-year track record of operating without incident is sufficient to show safety, I guess? The FRA is not looking at whether there was an incident or not. The FRA has granted the blanket exemption. If you've been operating for more than two years, you get to carry... You get to operate with single-person crews. But they don't look at whether that particular... Whether any particular railroad has had an incident. It's not an individualized risk assessment. It's based on the broad assumption that short-line railroads can operate safely. And are there any short lines that have been carrying hazardous materials over the prior two years that have had incidents? All railroads have incidents. I'm not aware of any short line that has had a serious incident. Those moves don't differ in terms of risk, whether there's hazmat or not. The train operations are the same, whether there's hazardous materials in the consist. The crew responsibilities are the same. The risk is low. These are low-speed operations. And so the probability of an accident is low, and the risk of severity is low. So the rule provides this blanket exemption, but then arbitrarily strips it if a carrier is newly required to carry hazardous materials. And when it does so, it imposes potentially unachievable pre-clearance risk assessment requirements and imposes burdensome and duplicative reporting obligations in order to continue. All right. Thank you. One quick question on the alerters. So the FRA, you're challenging this rule saying that the FRA has changed its position on alerters, and therefore there's sort of a heightened justification requirement. The FRA does not acknowledge that it's changing its position on alerters. Can you respond to that, why we should count what you're saying as opposed to what the FRA is saying? I think you've pointed to one comment to a 2012 rule, and the FRA says it's just one comment. They can't be charged with knowledge of that. Well, like a district court, it can be charged with having knowledge of the record. So an agency has to know its own record. In addition to that comment, the FRA was involved when the Indiana Railroad came to it and said we want to start single-person operations. And so the notion that there were no operations or that the FRA was not aware of these single-person operations is just not supported. All right. Thank you very much, Mr. Rifkind. And you've reserved a minute for rebuttal. We'll hear from Ms. Myron. Good morning. May it please the Court, Laura Myron for the Federal Railroad Administration. The rule before you is a common-sense product of reasoned decision-making. It is well within the agency's statutory authority, and it is not otherwise arbitrary and capricious. I'd like to start briefly with the statutory authority point. Petitioners don't contest that the Federal Railroad Administration can regulate train crew size. And that follows very clearly from the statutory authority that allows the Federal Railroad Administration to regulate safety as it relates to railroad operations. They contest that the agency has not demonstrated sufficiently that this rule is necessary for crew size, and that is a repackaging of their APA arguments. I'm happy to touch on what the rule says specifically, and I'd like to do so with regard to why this rule is necessary at this time, but I do want to make that point clear about the statutory authority point. And if I could turn you, I think, to some of the questions you have been discussing to the rule. This is on 25053 of the final rule, as well as 25063 and 6-4, and 8-3 and 8-4. On those pages, the agency goes through very carefully and says, one, we have lots of reasons to think that a two-person crew, which is, as was discussed, the industry standard for Class I operations, and is, for many Class II operations, what they have been operating with, is safe and should be the default here. We will look to information and data that has been accumulated since the 2019 rulemaking. We are re-evaluating, and this is in the part where the agency is acknowledging a change from prior rulemaking, acknowledging that we are re-evaluating the previous studies. We are independently also considering additional data from the time period since the 2019 rulemaking, and we are concluding that the default should be a two-person crew, unless the railroad can show, through the special approval process or through an exception. So, I'm sorry to interrupt, but counsel on the other side says, you know, this special approval process, it's a mirage. We can't get special approval. I wonder if you want to address that. Yes, I would be happy to. Thank you, Your Honor. So, I would make two points in response. The first is, the rule outlines a number of very common sense information that the railroads need to provide in order to get special approval. It also includes a risk assessment matrix, and provides that if the railroad does not want to use the provided risk assessment methodology, it can submit its own, and that is in the final rule in the regulation. What about the statement on behalf of the FRA that it's going to be the exception that we grant these things, and we're just going to very rarely grant them? Yes, that leads me to my second point, which is, no class one railroads have sought any special approval for a one-man crew operation. 167 or so class two and class three operations have provided through the notice and legacy exception that they are continuing to operate with a one-man crew. There have been a couple, less than 10 petitions filed by class two and class three. A number of them are incomplete, and so they're discussing with the agency how to resolve that, and I understand there are two complete petitions pending. But how long have they been pending for? I don't know. The rule says that they have 120 days to, that the administration will resolve it within 120 days. I don't think they're outside that period, but I don't have the specifics. But I think the point from both an APA perspective and a factual perspective is that there's no reason to think that the special approval process provides a basis for invalidating the rule, because the class one railroads in particular have not sought to use it. If they were to go through the approval process, they were to reach a result that they disagreed with, it would be subject to judicial review, and they could challenge it at that point. So it doesn't provide a basis at this juncture to invalidate the entirety of the rule. Of course, you know, this is a special approval process. The agency does expect that the general default rule will be that railroads operate with two people. But I would point the court to the regulatory impact analysis, which is in the record, which notes that the agency expects that a number of class one railroads will seek special approval and that they will be approved if they provide the relevant information. Of course, as I noted at the outset, they haven't done so. So we don't have reason to think that this is an impossible hurdle that they will not be able to clear. And again, it is subject, you know, if they were to seek special approval and be denied, that would be subject to judicial review and would provide an opportunity for a court to weigh in on that conclusion. And I just wanted to note, I'd like to also briefly... Let me ask you a question about the labor costs. So one of the areas of challenge that you're facing today is that you have said in the final rule that railroads currently operating with two-person crews will incur no costs at all from the rule. Whereas in the 2016 NPRM, you said the costs for the rule over 10 years would be $27.7 million. And now the costs in the final rule are $6.6 million that deal with some of the application costs and record keeping. But how can you just drop labor costs when you did take it into account in the 2016 NPRM? Well, I would say two things in response. The first is that the labor costs with respect to Class 1 railroads in particular reflect that there are no operations that operate with less than two-man crews. We're not imposing a rule here that is asking Class 1 railroads to put someone on the train that wasn't there before. We're asking them to demonstrate through the special approval process that it is safe to remove that person before they do so. And I also would note that the current rule before you differs somewhat from the prior rulemakings in that it includes additional exceptions and the special approval process, particularly for Class 2 and Class 3 operations. That makes it easier for them to continue operations with one-man crews provided they can demonstrate that it is safe to do so either through a proven safety record or through the special approval process. So Class 1 railroads can apply for an exception to the two-man rule, correct? Absolutely. So if you have a, when you're issuing the final rule, and I think you do account in the cost-benefit analysis, you anticipated a certain number of exceptions, a certain number of special assessments that would be submitted. Yes, Your Honor. In acknowledging that exceptions for Class 1 might be submitted, why aren't you taking into account the fact that, but for the exception process, that Class 1 railroad could have dropped a crew member, and therefore there's a corresponding labor cost? Well, to be clear, they haven't dropped a crew member. There's no Class 1 railroads operating with a one-man crew, and there are no Class 1 railroads that have sought to, you know, get special approval to do so. So I do think the cost in the analysis does reflect the reality of compliance costs for industry at the imposition of the rule, and that's what's required for a cost-benefit analysis. It is what is the cost of compliance with the introduction of this rule? Because they do operate with two-man crews, it is, you know, at the point that the rule went into effect, zero for Class 1 railroad operations. If I could touch briefly on, as my time is concluding, the risk reduction plan, which I take petitioners to be suggesting is a statutory and regulatory scheme that provides a similar approval to the special approval process, I just want to make very clear, and I would have said reg. 962 at 71 and 92. The Federal Railroad Administration does not approve mitigation proposals for railroads that are making changes to its operations. What it approves is a process through which the railroad will analyze and identify risks and hazards and will provide mitigation measures. It doesn't approve the substantive changes to railroad operations, and that makes sense because, of course, railroads make substantive changes to their operations all the time, and all of those changes have impact on the various risks and hazards that are created. What it does is it approves at the outset a sort of risk matrix that the railroad will use to identify and mitigate measures, and I think that is very important because I want to make clear that what the agency is doing is not sort of analyzing changes to crew size and giving a thumbs up or a thumbs down. And lastly, I mentioned this, but I would like to reiterate, the rule doesn't prohibit one-man crews. It provides ways to ensure safe operation of railroads with one-person crews. It has a special approval process, which Class I railroads have not taken opportunity of, but many Class II have, through the various exceptions, continued to operate with only one-man railroads. And certainly, there's sort of no basis here to think that this, as the Court has pointed out, is not the basis of reasoned decision-making, and there's no basis to invalidate it. On the rule that stands before you, in which the agency acknowledges, as I noted at 25053, that it is true that there are no accidents in which we can trace the cause to one-man crews, but that there are plenty of reasons to conclude that, at least for now, until there are technological improvements or other changes, that the default rule should be a one-man crew. We urge the Court to deny the petition. Two-man crew. Sorry, two-man crew. Thank you. We urge the Court to deny the petition, unless the Court has further questions. So if the FRA doesn't have evidence that two-person crews are safer, how then, in the special assessment process and the exception process, are the railroads able to provide supporting evidence that a one-man crew is safe or safer? Sure. So the special approval process takes account of a number of things, particulars that are specific to each railroad and its operations. Some of those things include the location of the operation, the kinds of tracks, the method of operation, any technological, any technology that the operation is using, any information on other operations on the same track, any other person, perhaps a ground crew that will perform the same tasks as the conductor, and allows the agency to make an individualized assessment and to conclude that, in particular circumstances, it is as safe or safer than a two-man crew. What the rule is suggesting is that the general default should be a two-man crew, unless the particulars of the situation demonstrate that a one-man crew is as safe or safer, and that is a very reasonable place for the agency to land, given the current information that it has, as well as the extensive information on the role of the conductor. For example, that the conductor secures the air brakes, or the hand brakes, and it's impossible to do that with only one person on board, given the way that the braking systems on trains currently operate. So it is a particularized assessment that allows for demonstration that it would be safe in the particular circumstances of that railroad's operation. I see my time is concluded. We have urged you to deny the petitions. All right. Thank you very much, Ms. Myron. We will hear next from Mr. McKinley. May it please the Court. I'm Sean McKinley. I'm Associate General Counsel with Intervenor Smart TD, and we're urging the Court to deny the petition from the numerous petitioners in this instance. My time is brief in this case. I wanted to emphasize something that was touched on by both the rail petitioners and the FRA, but the scope of congressional action when it comes to determining the pathway to reducing crew size. The carriers, when I use carriers or railroads interchangeably, the railroads emphasize that Congress has already created a pathway to reduce crew size under the Rail Safety Improvement Act of 2008. That pathway is found through the risk reduction plan process as outlined in that statute. But I want to emphasize that what the carriers are asking for here is that for this Court to find that the FRA's rulemaking authority was severely curtailed by the RSIA without Congress actually explicitly saying so. Now, when you look at what the statute says, the carriers here focus on employee levels and schedules, but it also mentions things like infrastructure, equipment, which would be rail cars and engines and the track and the switches and everything that makes a railroad go. Those are also all parts of a risk reduction plan. By the carriers here saying that, well, FRA can't regulate crew size because that's part of a risk reduction plan, those things are also included as well. So the scope of what they're asking for here goes beyond this case, and so I just wanted to point the Court's attention to that issue particularly. With respect to some of the questions that were brought up, I want to address necessity. I think a lot of the points were hit, but the carriers are very focused on statistical data. In this case, the record is voluminous. There were 15,000, I think, comments submitted, and I understand that the carriers say that, well, that's an anecdote from a couple people who were involved in an accident. These are the people that actually run trains. They are on the tracks, they are in the cabs, they are on the ground. They're the ones with the experience that are actually out there and see what's going on. So I don't want to be dismissive of their comments and what they've submitted. I just wanted to emphasize that. Another point I wanted to make, it wasn't directly addressed, but it has to deal with the FRA's authority to issue rules. Now, the carriers emphasized the benzene case, which looked at OSHA regulations on benzene exposure. But in that case, I just want to point out that the Court had said that, I want to see something more from Congress that demonstrates that you have the broad rulemaking authority that you're claiming here, to OSHA is what they were saying. Well, here we have it, 49 U.S.C. 10C3. It's right there. Safety is the highest priority. So an issue of regulation, that's what the FRA has to consider, and that's what they've done here. And my time is up. I thank you for your time. All right. Thank you, Mr. McKinley. We'll hear again from Mr. Dupree. You've reserved three minutes. Mr. Dupree, what do we make of the fact that no Class 1 railroads have applied for an exception as it relates to the claim that the FRA inappropriately failed to consider the labor costs for the Class 1 railroad? Sure. Well, first, I would say that FRA said explicitly in the final rule that they expected, you know, reams of special approval petitions to be filed. That was not true. I think they were premising it on the false suggestion that railroads would see this as a realistic, viable option to obtain special approval for their operations. That's not true. But I would also point out, Your Honor, that regardless of whether or not the special approval process is, you know, meaningful and viable, the agency has no business setting what my friend described as the default setting for a two-person crew mandate without data showing that two-person crews are necessary for railroad safety. That's the core of our position here, Your Honor, is that an agency can't regulate and then say, we expect over time that the evidence will show we were right. In other words, they... Why can't they take the common sense position based on the extensive history that two-person crews are the default and that things like you need the conductor to be able to pull the handbrakes who's located in a different place from the engineer? Why can't they regulate it based on that knowledge? For two reasons. One is that I would respectfully disagree with the idea that this is kind of the common default. In other words, short lines have been using them for decades. Amtrak, passenger trains, commuter trains all use one-person crews. So if you look at railroading out in America, it is not a uniform two-person and the crew is the status quo. So that's the first point I would make. The second point is that I think even my friends acknowledge that with the advent of technology, positive train control and the like, many of those functions that Your Honor described that historically have been performed by the conductor no longer need to be. They can be done on an automated basis. And that's why you see such stunningly strong safety results for one-person operations. As FRA says, the biggest cause of accidents and incidents is human error. The whole point of moving to one-person operations is to increase or minimize the chance of human error. That's one of the major benefits of these one-person crews. And whereas the rest of the transportation world is moving in the direction of encouraging greater autonomy, harnessing technology to achieve safety benefits, FRA is trying to lock the railroad industry into this 1960s world by preventing any sort of beneficial change. Why have no class one railroads applied for an exception? I think the answer would be different with regard to each class one. My suspicion is several things. One, I think they think the standard is impossible to satisfy. Number two, I think they may just say they're not ready right now to move to one-person operations. Number three, some of the railroads at least have collective bargaining agreements with the unions that would prevent a move to one-person crews absent working that out through the collective bargaining process. Do those answers you just gave support the FRA's position that that's why they didn't take the labor costs into account for the class one railroads? No, not at all, Your Honor. They said, I mean, I think just a flatly incorrect statement where they said class one railroads aren't affected by the rule, they don't bear costs is completely wrong. I think that that particular violation, Your Honor, asking about their failure to address labor costs, even though in the prior rulemaking, that was the bulk of the cost. They projected 28 million in costs in the prior rule. This rule, magically, the costs went down to six million because they didn't consider labor costs. Even the Office of Management and Budget under the Biden administration directed agencies to consider opportunity costs of labor when calculating the cost of their rule. They didn't do that. That is a clear, low-hanging fruit APA violation. The last point I would like to make is in response to my colloquy with Judge Kidd earlier about the idea that could FRA basically preserve the status quo and see what the data develops. I would point out to the court that FRA began collecting this data about a year and a half ago, right around the time the final rule issued. They now have a year and a half of the magical data that everyone has been waiting for. So I would respectfully suggest to the court that rather than say, we're going to approve this rule, even if at the time it was issued, there wasn't any data or evidence to support it, the right disposition for this case would be to remand to the agency with a suggestion or instructions to reconsider whether or not a two-person mandate makes sense. Now that they have this evidence, a year and a half of data answering the exact question Your Honor posed, showing that these one-person operations are safe, give the agency a chance to look at this data and make the decision for itself whether or not this mandate can possibly be justified. It can't on the current record. All right. Thank you very much. And Mr. Rifkin, you have reserved one minute. Thank you, Your Honor. I'd like to point out that this notice of proposed rulemaking started with the FRA's estimate that there were just nine railroads operating with single-person crews. The short-line association told the FRA it was closer to 400. The FRA rejected that analysis and came up with 75. We just heard from counsel that, in fact, it is closer to at least 200 railroads that operate today with single-person crews. That means their cost analysis is significantly off, and there is no basis for imposing the regulatory burden on short lines that are associated with the risk assessment. That risk assessment doesn't look at whether one-person or two-person crews are safer. It looks at other factors. And it has no standard. It is entirely discretionary. I see my time is up. All right. Thank you very much, counsel, and we will be in recess for the rest of the hearing.